IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIENER MASCHINENBAU GmbH,

    Debtor/Appellant,

      v.

PHYLLIS ANN BASS, individually and
as executor of the estate of Roy Glenn
Bass, deceased,

    Defendant.

CIVIL ACTION FILE
NO. 1:24-CV-4462-TWT

---

LACOM GmbH,

    Debtor/Appellant,

      v.

PHYLLIS ANN BASS, individually and
as executor of the estate of Roy Glenn
Bass, deceased,

    Defendant.

CIVIL ACTION FILE
NO. 1:24-CV-4464-TWT

## OPINION AND ORDER

This is a bankruptcy appeal. It is before the Court on Appellants Kiener

Maschinenbau GmbH ("Kiener") [Kiener Doc. 1][1] and LACOM GmbH's

("LACOM") [LACOM Doc. 1][2] appeals of the Bankruptcy Judge's Order

---

[1] References made in the form [Kiener Doc. _] relate to the docket under
Civil Action No. 1:24-CV-04462-TWT.

[2] References made in the form of [LACOM Doc. _] relate to the docket
under Civil Action No. 1:24-CV-04464-TWT.

granting, in part, Appellee Phyllis Ann Bass' Motion for Stay Relief. For the reasons stated below, the judgment of the Bankruptcy Court is affirmed.

## I.    Background

Chapter 15 of the Bankruptcy Code was enacted to provide effective mechanisms for dealing with cases of cross-border insolvency. 11 U.S.C. § 1501(a). The key objectives are to provide for (1) cooperation between bankruptcy institutions in the United States and foreign countries, (2) greater legal certainty in trade and investment, (3) fair and efficient administration of cross-border insolvencies for all parties involved, (4) protection and maximization of the value of the debtor's assets, and (5) facilitation of the rescue of financially troubled businesses. 11 U.S.C. §§ 1501(a)(1)-(5).

This case arises out of a Chapter 15 proceeding. The Court will briefly review the facts within the Bankruptcy Court's Order that are relevant to this appeal. Appellants Kiener and LACOM are German corporations based in Lauchheim, Germany, and are engaged in the manufacturing and engineering industries. The Appellee, Phyllis Ann Bass, is the surviving spouse of Roy Glenn Bass and is participating in this action both in an individual capacity and as the executor of the estate of her spouse.

In 2018, Roy Bass died from injuries sustained in an accident at work in a carpet manufacturing facility in Georgia. The Appellee subsequently sued the Appellants and others in Georgia state court for wrongful death and related tort claims. In 2021, an unrelated defendant removed the litigation to this

district, where the litigation remains pending (the "District Court Litigation") before Judge Calvert.[3] Since the case was removed, the Appellants have actively participated in the litigation.

In May 2023, for reasons unrelated to the District Court Litigation, the Appellants filed Insolvency Proceedings in Germany. As part of the Insolvency Proceedings, the German insolvency court immediately entered preliminary protections and appointed Patrick Wahren and Arndt Geiwitz as administrators (the "Administrators") for Appellants Kiener and LACOM, respectively, on a preliminary basis. Within two weeks of these actions, the Appellants asked the District Court to enforce a litigation stay imposed under German insolvency law as a matter of comity. After requesting further briefing, the District Court took no action on the Appellants' notices or their request to stay the District Court Litigation. (*Bass v. Lacom GmbH et al.*, 1:21-cv-00144-VMC, Docs. 80, 81, 87).

On August 1, 2023, the German insolvency court entered "Commencement Orders" within the Insolvency Proceedings, which commenced the pertinent proceedings and permanently appointed the Administrators. Subsequently, the Appellants filed a notice of the Commencement Orders in the District Court Litigation, reiterating that German law imposed a litigation stay on the District Court Litigation. (*Id.*,

---

[3] *Bass v. Lacom GmbH et al.*, 1:21-cv-00144-VMC ("Dist. Ct. Litig. Docket")

Doc. 104). However, the Appellants did not request a stay in the District Court Litigation, and the Appellants continued to be an active participant in the discovery phase. Later that month, the Appellee filed claims in the Insolvency Proceedings for €50 million and the Administrators disputed the claim on the basis that the District Court Litigation remains ongoing. From August 2023 to June 2024, the Appellants remained involved in the discovery phase of the District Court Litigation. Following an unsuccessful mediation attempt, the Appellee sent a *Holt* Demand.[4]  The Appellants filed their Chapter 15 cases a week after the *Holt* Demand.

The Chapter 15 cases filed by the Appellants in the Bankruptcy Court sought (1) recognition of the Insolvency Proceedings as foreign main proceedings, (2) recognition of the Administrators as foreign representatives of the Appellants, (3) to have the orders commencing the Insolvency Proceedings given full force and effect, (4) all relief under 11 U.S.C. § 1520, including imposition of the automatic stay under 11 U.S.C. § 362(d) on all litigation within the United States, including the District Court Litigation, and (5) further additional relief under 11 U.S.C. § 1521, including extending provisionally sought relief on a final basis. The Appellants also filed emergency requests to impose the stay relief on a provisional basis.

---

[4] A *Holt* Demand is a settlement demand by one party to another that allows the demanding party to potentially bring a bad faith failure to settle claim against the receiving party's insurance carrier. *See S. Gen. Ins. Co. v. Holt*, et al., 262 Ga. 267, 268-69 (1992). A receiving party has fourteen days to respond.

In response, the Appellee filed a motion for stay relief the day before an emergency hearing on the Appellants' emergency motions. After conducting an emergency hearing, the Bankruptcy Court granted in part and denied in part the Appellants' emergency requests for provisional stay relief, imposing the stay only to the extent necessary to toll the running of the *Holt* Demand deadline.

After an evidentiary hearing on the Chapter 15 petitions and the Appellee's motion, the Bankruptcy Court (1) recognized the Insolvency Proceedings as foreign main proceedings, (2) applied the Commencement Orders to the Chapter 15 cases, provided that nothing in the Commencement Orders stayed the District Court Litigation to any extent not already stayed under Germany law, (3) declined to extend any relief granted in response to the Appellants' emergency motions to finality, and (4) granted the Appellee's motion, in part, for relief from the automatic stay in 11 U.S.C. § 362, allowing the District Court Litigation to proceed to its finality, including any appeals or collection efforts arising out of the litigation. This appeal followed.

## II.    Legal Standards

"In reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions *de novo* . . . but must accept the bankruptcy court's factual findings unless they are clearly erroneous." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993) (citation omitted). A district court cannot make independent factual findings. *Id.*

"A decision to lift the stay [under 11 U.S.C. § 362] is discretionary with the bankruptcy judge, and may be reversed only upon a showing of abuse of discretion." *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989). "An abuse of discretion occurs when a [lower] court applies the wrong principle of law or makes clearly erroneous findings of fact." *In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013). "A factual finding is not clearly erroneous unless, after reviewing all of the evidence, [the reviewing court] is left with a definite and firm conviction that a mistake has been committed." *In re Daughtrey*, 896 F.3d 1255, 1274 (11th Cir. 2018) (quotation marks and citation omitted). "Under the abuse of discretion standard of review there will be occasions in which [the reviewing court] affirm[s] the [lower court] even though [the reviewing court] would have gone the other way had it been [the reviewing court's] call." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).

### III.    Discussion

Neither party contests in this appeal the Bankruptcy Court's decision to recognize the Insolvency Proceedings as "foreign main proceedings." However, the Appellants make several arguments in opposition to the Bankruptcy Court's decision to grant stay relief to the Appellee. The Court will address each argument accordingly.

### A. Merits of Stay Relief

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of the commencement of or continuation of judicial process. 11 U.S.C. § 362(a). For this automatic stay to apply in Chapter 15 cases, a court must first recognize a foreign proceeding as a "foreign main proceeding." 11 U.S.C. § 1520(a)(1). Here, the Bankruptcy Court held that the Insolvency Proceedings were "foreign main proceedings," and no party has raised this matter on appeal. (Kiener Bankr. Ct. Op. & Or., at 2, 12-14 [Doc. 2-21]).[5]

Section 362 also contains provisions for stay relief. "On request of a party in interest and after notice and a hearing, the [Court] shall grant relief from the stay provided under [11 U.S.C. § 362(a)], such as by terminating, annulling, modifying, or conditioning such stay . . . for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not shed any light on what "cause" entails. However, courts in this district have recognized that pending non-bankruptcy litigation may constitute "cause" under the Bankruptcy Code. *See In re Robertson*, 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000). To determine whether to grant relief from a stay in order to pursue litigation in a non-bankruptcy forum, courts in this district use a three-factor balancing test:

---

[5] The parties in *Bass v. LACOM GmbH*, 1:24-cv-04464, do not include the Bankruptcy Court's Order in the record on appeal. However, it is included in *Bass v. Kiener GmbH*, 1:24-cv-04462. The Court will take judicial notice of the order as it pertains to *LACOM GmbH* while providing a citation to the *Kiener GmbH* record.

1. Whether any great prejudice to either the bankruptcy estate or the debtor will result from prosecution of the lawsuit;

2. Whether the hardship to the non-debtor party by continuation of the automatic stay considerably outweighs the hardship to the debtor; and

3. Whether the creditor has a probability of success on the merits of [her] case.

*Id.*

Using these factors, the Bankruptcy Court determined that stay relief was appropriate for the Appellee under 11 U.S.C. 362(d)(1). The Appellants now appeal, arguing that the Bankruptcy Court improperly evaluated the factors and that the factors counsel against stay relief. The Court will review each factor and consider the Appellants' arguments in turn.

### 1. Great Prejudice

As to the first factor, the Bankruptcy Court considered the Appellants' three main arguments for why they would suffer "great prejudice" from the continuation of the District Court Litigation. First, the Bankruptcy Court considered the cost of litigation that would be incurred by continuing the District Court Litigation, along with any potential appeals and subsequent litigation to domesticate the judgment in Germany. (Kiener Bankr. Ct. Op. & Or., at 22-23). Second, the Bankruptcy Court considered the potential delay in resolving the Appellee's claims and its effect on preventing distribution and recovery of assets to other creditors. (*Id.* at 23-24). Finally, the Bankruptcy Court considered the Appellants' difficulties in compelling certain European

witnesses to testify within the District Court Litigation because the Appellants were no longer operating as businesses. (*Id.* at 24-25). The Bankruptcy Court ultimately found that neither the Appellants nor their insolvency estates would suffer any great prejudice from the continuation of the District Court Litigation. (*Id.* at 22).

On appeal, the Appellants contest the Bankruptcy Court's decision, arguing that the Bankruptcy Court erred in its analysis in light of the factual record. The Court takes each argument in turn to determine whether the Bankruptcy Court abused its discretion in granting stay relief.

### a. Cost of Litigation

In its cost analysis, the Bankruptcy Court found that the Appellants had almost no assets within the United States and that litigation expenses for the Appellants were covered by eroding limits insurance (the "Insurance Policy"). (Kiener Bankr. Ct. Op. & Or., at 23). These findings led the Bankruptcy Court to determine that the Appellants and their insolvency estates were not shouldering any costs of litigating the Appellee's claims. (*Id.* at 23).

The Appellants argue that the Bankruptcy Court impermissibly factored in the Appellants' lack of assets within the United States in its prejudice analysis because having assets within the United States is not a prerequisite to petition under Chapter 15. (Kiener Appellant's Br., at 17 [Doc. 6]; LACOM Appellant's Br., at 17 [Doc. 6]). The Appellants are correct that having assets in the United States is not a prerequisite to filing a Chapter 15

9

petition, but their argument that a Bankruptcy Court may not consider the lack of assets fails.

"There is no set list of circumstances that a bankruptcy court is required to consider in evaluating whether [11 U.S.C. § 362(d)(1)] 'cause' exists to lift the automatic stay." *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013). A review of the circumstances relevant to stay relief is case-specific and is based on the totality of the circumstances. *See id.* Therefore, a bankruptcy court, at minimum, may consider all factual circumstances relevant to the stay relief issued.

Here, the Appellants brought Chapter 15 petitions to recognize the Insolvency Proceedings. In order to understand what the Bankruptcy Court may consider under Chapter 15, the Court must examine the relevant statutory provision and the interests attached to the Chapter as a whole. *See In re Al Zawawi*, 97 F.4th 1244, 1254 (11th Cir. 2024) (conducting statutory analysis similarly in order to ascertain the meaning of the word, "debtor," within Chapter 15).

Chapter 15 of the Bankruptcy Code provides that, "[u]pon recognition of a foreign proceeding that is a foreign main proceeding-- (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is *within the territorial jurisdiction of the United States* . . . ." 11 U.S.C. § 1520(a)(1) (emphasis added). The canon against surplusage is dispositive on this issue; "every word and every provision is to be given effect . . . None should

be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012).

The limiting language within the statute informs the Court's conclusion that the Bankruptcy Court did not abuse its discretion in considering the Appellants' assets in the United States within its prejudice analysis. *See id.* at 21 ("[L]imiting provisions are no less a reflection of the genuine 'purpose' of the statute than the operative provisions, and it is not the court's function to alter the legislative compromise"). This conclusion comports with the general purpose of Chapter 15, which is to provide an avenue for foreign representatives of a foreign insolvency proceeding to seek assistance from domestic courts in an ancillary proceeding once the foreign proceeding is recognized by the bankruptcy court. *See In re Condor Ins. Ltd.*, 601 F.3d 319 (5th Cir. 2010); *In re Al Zawawi*, 97 F.4th at 1248 ("Chapter 15 of the Bankruptcy Code governs ancillary and other cross-border cases").

The Appellants also argue that the Bankruptcy Court erred in its prejudice analysis when it considered the effect of the Insurance Policy on the total cost of the District Court Litigation to the Appellants. (Kiener Appellant's Br., at 16-17; LACOM Appellant's Br., at 16). The Appellants urge the Court to consider that the Insurance Policy may not suffice to cover the total cost of the District Court Litigation, especially when the damages claimed by the Appellees in the District Court Litigation exceed the Insurance Policy. (Kiener

Appellant's Br., at 21, LACOM Appellant's Br., at 20-21). However, the Appellants' arguments are unpersuasive because they are not grounded by the plain text of the Bankruptcy Court's Order and are grounded entirely upon speculation and conjecture.

If the Appellee prevails in the District Court Litigation, the Bankruptcy Court's Order restricts the Appellee's collection efforts to the amount remaining in the Insurance Policy. (*See* Kiener Bankr. Ct. Op. & Or., at 29). As will be further discussed in Section B of this opinion, the Bankruptcy Court does not require the Appellants to pay out a specified sum. Rather, the recovery that the Appellee may seek, at this time, is limited to the amount remaining within the Insurance Policy at the conclusion of the District Court Litigation. (*Id.*). Therefore, the Bankruptcy Court did not abuse its discretion in determining that the Appellants would not suffer great prejudice from the cost of the litigation considering the stay relief entered.

### b. Undue Delay

In considering whether stay relief would cause undue delay in the Insolvency Proceedings, the Bankruptcy Court determined that any potential delay would be a non-issue since the Appellants' preferred course would take far longer than allowing the District Court Litigation to proceed. (Kiener Bankr. Ct. Op. & Or., at 23-24). This is especially true, the Bankruptcy Court found, since the District Court Litigation is nearly ready for trial after four years of litigation. (*Id.*).

The Appellants, instead of arguing any reversible error by the Bankruptcy Court, reiterate their argument that "the continuation of the District Court Litigation will delay resolution of the insolvency proceeding and corresponding distribution for the benefit of a single potential creditor holding an unliquidated claim." (Kiener Appellant's Br., at 16, LACOM Appellant's Br., at 16). The Court is unconvinced that any abuse of discretion occurred.

The Bankruptcy Court specifically acknowledged the Appellants' argument but found the argument unpersuasive because the Appellee would have to spend more time in Germany to bring her claims against the Appellants and examined the evidence supporting that conclusion. (Kiener Bankr. Ct. Op. & Or., at 23-24). The Appellants have not shown that the Appellee's claims are the only unliquidated claims remaining before distribution can occur in the Insolvency Proceedings; instead, they only asked their expert, Dr. Phillip Esser, whether the insolvency estates can be distributed without the resolution of the Appellee's claims. (*See* Esser Direct Examination at 55:11-55:17 [Doc. 2-23]). Furthermore, the evidence shows that, if the Appellee were to restart her claims against the Appellants, it would take, at best, around one-and-a-half years to resolve her claims in the German court system. (*Id.* at 70:5-70:20). Meanwhile, the District Court Litigation has continued for four years with considerable time and expense. (*See* Dist. Ct. Litig. Docket, at 21-35 [Doc. 2-10]). The Appellants attempt to remedy this problem by showing, through Dr. Esser's testimony, that discovery from the

District Court Litigation could be utilized within the German proceedings. (*See* Esser Direct Examination at 44:21-44:24). However, the Appellants fail to show that would certainly occur. In fact, testimony given by the Appellee's expert, Mr. Jochen Korves, shows that there is no guarantee that a German court would accept the discovery already conducted within the District Court Litigation. (*See* Korves Redirect Examination at 137:12-139:9 [Doc. 2-23]). Therefore, the Bankruptcy Court did not err.

### c. Foreign Witness Availability

In determining whether prejudice arises from the Appellants' difficulties in calling key witnesses, the Bankruptcy Court acknowledged that several witnesses were former employees in Germany and that the only way to ensure they could testify in the United States would be through their employers requiring it. (Kiener Bankr. Ct. Op. & Or., at 24-25). In addition, the Bankruptcy Court acknowledged the improbability of conducting depositions within Germany because German law prohibits such discovery from occurring within its borders. (*Id.* at 25).  However, depositions of the witnesses had already been conducted during discovery in the Netherlands when the witnesses were employees of the Appellants prior to the Insolvency Proceedings. (*Id.*). The Appellants intentionally chose not to ask questions at the depositions for purposes of preserving evidence for trial. (*Id.*). The Bankruptcy Court ultimately concluded that, while there would be some difficulties for the Bankruptcy Court in preserving evidence from the European

witnesses to use at trial, it did not amount to "great prejudice" that would counsel against granting stay relief. (*Id.*). The Appellants argue on appeal—and without supporting authority—that the Bankruptcy Court erred in this finding, requesting reversal on the ground that they would not be able to defend against the Appellee in the District Court Litigation otherwise. (Kiener Appellant's Br., at 25, LACOM Appellant's Br., at 25).

The Federal Rules of Civil Procedure allow for both parties to take depositions of witnesses in the course of discovery. *See* Fed. R. Civ. P. 30. At any subsequent hearing or trial, either party may use the deposition of a witness if a court finds "that the party offering the deposition could not procure the witness's attendance by subpoena" if certain conditions are met. Fed. R. Civ. P. 32(a)(4)(D). The Federal Rules of Evidence contain a mirror hearsay exception allowing for the admission of deposition testimony from unavailable witnesses when witnesses cannot be compelled to testify. *See* Fed. R. Evid. 804.

Here, the Appellants acknowledge that the testimony from these foreign witnesses would benefit their case within the District Court Litigation. Yet, despite being fully aware of the difficulties in procuring testimony from their former employees during the District Court Litigation, the Appellants made the intentional decision to postpone their questions for these witnesses until trial. From the start of the District Court Litigation in 2021 to the initiation of the Insolvency Proceedings, the Appellants had control over these witnesses as their employer and took no further depositions. Now, the Appellants are faced

with the consequences of their own strategic decisions and look to the judicial system to provide a remedy.

Ultimately, the Court agrees with the Bankruptcy Court that the Appellants may suffer some prejudice, but this alone will not constitute "great prejudice" because of the Appellants' own responsibility in creating the problem they complain of. The Court is not inclined to grant the Appellants a mulligan due to their decisions through the guise of a Chapter 15 proceeding. Therefore, the Bankruptcy Court did not abuse its discretion when considering whether this issue constitutes "great prejudice."

### 2. Hardship Balancing

The second factor requires a court to consider whether the hardship to the non-debtor party without stay relief considerably outweighs any hardship imposed on the debtor with stay relief. *See In re Robertson*, 244 B.R. at 882. The Bankruptcy Court found that the hardship to the Appellee substantially outweighs any prejudice suffered by the Appellants. (Kiener Bankr. Ct. Op. & Or., at 25-26). On appeal, the Appellants argue that the Bankruptcy Court erred in overvaluing the Appellee's hardship from maintaining the stay while undervaluing the Appellants' hardship from continuing the District Court Litigation. (Kiener Appellant's Br., at 14-16, 17; LACOM Appellant's Br., at 14-15, 17).

Because the Appellants attempt to relitigate the facts arguing no clearly erroneous finding of fact or error of law, the Court does not find that the

Bankruptcy Court abused its discretion. *See Bowers v. Norfolk S. Corp.*, 300 F. App'x 700, 702 (11th Cir. 2008) ("While most of [the appellant's] arguments attempt to reargue the facts presented to the district court, one argument merits discussion"). Despite this failing, for the sake of completeness, the Court will review the Appellants' arguments. The Court will first discuss the Appellants' arguments against the hardship suffered by the Appellee, then turn to the Bankruptcy Court's balancing of the matter.

### a.  The Appellee's Hardship

The Bankruptcy Court found that the Appellee will suffer substantial hardship if the stay prevents her from continuing the District Court Litigation because she would have to refile her tort claims against the Appellants in Germany, which causes a number of issues. (*See* Kiener Bankr. Ct. Op. & Or., at 25-26). First, the Appellee will lose her constitutional right to a jury trial by litigating the matter in a German court. (*Id.* at 25). Second, the District Court Litigation is nearing trial after four years of discovery, summary judgment motions, and mediation, and starting over in Germany would result in considerable lost time and expense. (*Id.* at 25-26). Third, the Appellee would not be able to continue with her present counsel and would be required to retain counsel in Germany who would be completely unfamiliar with her case. (*Id.* at 26). Fourth, the Appellee's financial resources would be strained by retaining German counsel without a contingent fee arrangement, whereas her current counsel is retained on such an arrangement. (*Id.*). Fifth, the Appellee

would have the same issues that the Appellants have in trying a case abroad regarding the availability of witnesses and related difficulties. (*Id.*).

The Appellants' only argument on appeal is that, under Chapter 15, the Appellee's right to a jury trial should not be considered within the hardship analysis. (Kiener Appellant's Br., at 14-15, LACOM Appellant's Br., at 14-15). In support of their argument, the Appellants ask the Court to consider *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031 (5th Cir. 2012), and *In re Ephedra Products Liability Litigation*, 349 B.R. 333 (S.D.N.Y. 2006). (*Id.*). However, neither case is relevant to the Appellants' appeal.

In both cases, the courts were confronted with Chapter 15 petitions where the issue centered on the recognition of foreign proceedings under 11 U.S.C. § 1506. *See In re Vitro S.A.B. de C.V.*, 701 F.3d at 1044-45; *In re Ephedra Products Liability Litigation*, 349 B.R. at 334-36. In both cases, the party contesting recognition argued the "public policy" exception contained within Section 1506 of the Bankruptcy Code, which allows courts to refuse recognition when the action would be "manifestly contrary to public policy." 11 U.S.C. § 1506; *see In re Vitro S.A.B. de C.V.*, 701 F.3d at 1069; *In re Ephedra Products Liability Litigation*, 349 B.R. at 335. The exception is a narrow one and will only be invoked under exceptional circumstances concerning matters of fundamental importance for the United States. *In re Vitro S.A.B. de C.V.*, 701 F.3d at 1069; *see In re Ephedra Products Liability Litigation*, 349 B.R. at 336. Accordingly, the Bankruptcy Court recognized the German Insolvency

Proceedings under Chapter 15 despite the Appellee's public policy arguments about the potential deprivation of a jury trial. (*See* Kiener Bankr. Ct. Op. & Or., at 15-17).

It is only after recognition of a foreign proceeding under Chapter 15 that a court may consider whether to grant stay relief. *See In re ABC Learning Centres Ltd.*, 728 F.3d 301, 311 (3d Cir. 2013). Whether a non-debtor will suffer substantial hardship is not an exception, but rather a factor to determine whether stay relief is necessary when there is pending non-bankruptcy litigation. *See In re Robertson*, 244 B.R. at 882; *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 337 (Bankr. D. Del. 2010), *on reconsideration in part* (Jan. 21, 2011), *subsequently aff'd*, 728 F.3d 301 (3d Cir. 2013) (applying the three-factor test to Chapter 15 petitions). Furthermore, the lack of constitutional protections within the German forum is undisputably relevant to the hardship inquiry because the Appellee would be forced to restart her case in Germany where jury trials are unavailable. Therefore, the Bankruptcy Court did not err in considering the Appellee's potential lost constitutional rights and determining that the Appellee would suffer substantial hardship.

### b. The Appellants' Hardship and Balancing

As discussed within the analysis of the first factor, *see* Discussion III.A(1), *supra*, at p. 8-16, the Bankruptcy Court did not err in determining that the Appellants may suffer some hardship as it relates to their defense in the District Court Litigation. However, such hardship does not amount to

"great prejudice" and is largely due to the Insolvency Proceedings and Kiener and LACOM going out of business. The Bankruptcy Court ultimately concluded that the Appellee's hardship substantially outweighs the Appellants' hardship. (Kiener Bankr. Ct. Op. & Or., at 25-26). The Appellants argue that the Bankruptcy Court failed to consider the principles of Chapter 15 cross-border insolvency when conducting the balancing test provided under this factor. (Kiener Appellant's Br., at 17, LACOM Appellant's Br., at 17). This argument is unpersuasive because the main hardship that the Appellants face—litigating in Germany— would be severely worse if borne by the Appellee.

If the Appellee were to litigate her claims in Germany, she may have to start the litigation from the beginning because there is no guarantee that the German court will accept the discovery from the District Court Litigation. The Appellee would face further difficulty obtaining witnesses and planning trial strategy in a foreign country as an individual litigant than the Appellants would. Furthermore, the issue of witnesses becomes clearer when considering that the District Court Litigation arose out of an accident in Georgia. Most of the relevant witnesses are likely to be in Georgia, causing serious hardship to the Appellee if she was forced to litigate in Germany. Meanwhile, the only hardship to the Appellants arises out of their own strategic error. Even considering the core principles of Chapter 15, the Bankruptcy Court did not

abuse its discretion when it concluded that the Appellee would be substantially harmed in comparison to the Appellants.

### 3. Likelihood of Succeeding on the Merits

The third factor requires a court to consider whether the creditor has a probability of success on the merits. *See In re Robertson*, 244 B.R. at 882. Even a slight probability of success on the merits will support lifting the automatic stay imposed by Section 362. *In re ABC Learning Centres Ltd.*, 445 B.R. at 338 (citation omitted). The Bankruptcy Court evaluated the Appellee's claims and determined that the Appellee has a strong probability of success in terms of obtaining a judgment against the Appellants in the District Court Litigation. (Kiener Bankr. Ct. Op. & Or., at 27). The Bankruptcy Court also determined that there was not sufficient evidence to conclude that domestication efforts in Germany by the Appellee would fail. (*Id.* at 27-28). The Appellants do not put forward any arguments related to this factor and the evidentiary record supports the findings of the Bankruptcy Court. Therefore, the Bankruptcy Court did not abuse its discretion in determining that the Appellee has a probability of success on the merits.

Because all three factors weigh in favor of granting stay relief, the Court ultimately holds that the Bankruptcy Court did not abuse its discretion in granting stay relief for the Appellee. The Court now turns to the Appellants' arguments against the manner in which the Bankruptcy Court structured its stay relief.

### B. Structure of Stay Relief

The Appellants claim that the Bankruptcy Court erred in asserting jurisdiction and control over the Appellants' assets outside of what is statutorily permitted under Chapter 15 of the Bankruptcy Code when it fashioned its stay relief. [6] (Kiener Appellant's Br., at 18; LACOM Appellant's Br., at 18).

When a debtor initiates a Chapter 15 proceeding, no separate bankruptcy estate is created. *In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009). Instead, any automatic stay applies to the property of the debtor within the United States. *See* 11 U.S.C. § 1520(a)(1); *id.* In Chapter 15 cases, "property of the debtor" includes all assets within the United States that could make up the debtor's insolvency estate. *In re ABC Learning Centres, Ltd.*, 728 F.3d at 312. A determination of what assets could make up the foreign

---

[6] The Appellants appear to raise this issue for the first time on appeal. A reviewing court generally will not consider an issue or theory that was not raised in the lower court. *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001). A reviewing court may consider an issue not raised in the district court (1) "if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice," (2) "where the appellant raises an objection to an order which he had no opportunity to raise at the district court level," (3) "where the interest of substantial justice is at stake," (4) "where the proper resolution is beyond any doubt," or (5) "if [the] issue presents significant questions of general impact or of great public concern." *Id.* Here, the Court will consider this argument on appeal because the argument appears to object to how the stay relief was fashioned, and the Appellants would not have had the opportunity to object to it during briefing on the matter before the Bankruptcy Court.

insolvency estate is generally determined by the law of the foreign country where insolvency proceedings are ongoing. *Id.*

As a general matter, the Appellants appear to misinterpret the Bankruptcy Court's Order. The Bankruptcy Court's Order states that "[the Appellee] *may* pursue collection efforts on any judgment obtained in the District Court Litigation solely to obtain recovery against any insurance policy of the Debtors that cover [the Appellee's claims]" and that the Appellee "*may not* pursue recovery against the German insolvency estates without further order of [the Bankruptcy Court]." (Kiener Bankr. Ct. Op. & Or., at 29) (emphasis added). The only control exerted by these provisions is over the Appellee, not any part of the German insolvency estate. The Bankruptcy Court's Order limits where the Appellee may seek relief from if she prevails instead of allowing the Appellee to seek relief from all assets controlled by the Appellants. It does not require the Appellants to transfer such assets to the Appellee.[7]

---

[7] Even if the Appellants are correct in their interpretation of the statute, their argument is contradictory to their position. 11 U.S.C. § 1520(a)(1) provides a jurisdictional limitation to the assets a bankruptcy court may issue a stay over and stay relief for. Neither party argues, nor does any evidence show, that a bankruptcy court has greater jurisdiction to issue a stay than it does to grant stay relief based on of the terms of 11 U.S.C. § 1520(a)(1). In that regard, if the Court assumes that the Appellants are right that the Insurance Policy exists outside of "the territorial jurisdiction of the United States," then the Bankruptcy Court would have no authority, by manner of stay, to prevent the Appellee from seeking collection from the Insurance Policy at the conclusion of the District Court Litigation because it would not be covered by the stay, under the Appellants' own admission. *See* 11 U.S.C. § 1520(a).

Even when confronting the Appellants' arguments on the merits, they fail as a matter of law. It is irrelevant where the Insurance Policy is located as an asset because Section 362's automatic stay will not apply to the proceeds of the Insurance Policy under the law of this Circuit. The Appellee will not be prohibited from collecting from the Insurance Policy if she prevails within the District Court Litigation.

Generally, an insurance policy owned by a debtor is considered to be property of the debtor's bankruptcy estate. *In re Stevens*, 130 F.3d 1027, 1029 (11th Cir. 1997). "The fact that the insurance policy is property of the bankruptcy estate, however, does not necessarily mean that the proceeds from that policy are also property of the estate." *Id.* In cases where the debtor is liquidating and will not survive the bankruptcy, the relevant inquiry is which party the rights lie with at the time the liability insurance proceeds are paid out. *Utica Mut. Ins. Co. v. Dean & Moore Ins., Inc.*, 2011 WL 13272690, at *3-4 (N.D. Ga Mar. 29, 2011); *see In re Stevens*, 130 F.3d at 1030 (finding that proceeds of an insurance policy were not part of the debtor's bankruptcy estate because the proceeds would have naturally flowed to the secured creditor upon damage to collateral).

*In re Jet Florida Sys., Inc.*, 883 F.2d 970 (11th Cir. 1989), is loosely instructive. There, the debtor obtained a permanent injunction under Section 524 of the Bankruptcy Code that voided all judgments that arose from a determination of the personal liability of the debtor. *Id.* at 972; *see* 11 U.S.C.

24

§ 524(a). The creditor brought a defamation action against the debtor despite the stay, arguing that his suit should proceed regardless because the debtor carried liability insurance and the debtor's assets would be untouched. *Id.* at 973. The Court ultimately agreed with the creditor, finding that the debtor would not be prejudiced because its property would not be subject to risk as long as the recovery was limited to the amount provided by the liability insurance. *Id.* at 974.

Inherent in the Eleventh Circuit's holding is the concept that liability insurance proceeds are separate from the debtor's assets in their estate; otherwise, the creditor would have been unable to proceed on his defamation claim. Here, the Insurance Policy is an eroding limits liability policy where the coverage available under the policy is reduced by the litigation expenses paid for by the insurance carrier.[8] (*See* Kiener Appellant's Br., at 8, LACOM Appellant's Br., at 8). Thus, as the Court understands the terms of the Insurance Policy, funds not used to pay for litigation expenses cannot be considered part of the Appellants' estates in Germany because, in the event that the Appellee prevails in the District Court Litigation, the remaining proceeds of the Insurance Policy would flow to the Appellee, not the Appellants. Like the debtor in *Jet Florida Systems*, the Appellants' estates will not be

---

[8] The actual Insurance Policy was not made part of the record before the Court. However, because the parties do not dispute the terms of the Insurance Policy, the Court relies on the parties' and the Bankruptcy Court's recitation of the Policy's terms in conducting its analysis.

impacted by any payment to the Appellee at the conclusion of the District Court Litigation. Therefore, the Section 362 automatic stay imposed by the Bankruptcy Court does not prohibit the Appellee from collecting from the Appellants' Insurance Policy at the conclusion of the District Court Litigation.

## IV.    Conclusion

For the foregoing reasons, the Bankruptcy Court's Order and Judgment is AFFIRMED as to Kiener and LACOM's appeals.

SO ORDERED, this  18th   day of September, 2025.


THOMAS W. THRASH, JR.
United States District Judge